Case No. 14-1427

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

**DEVIN COPELAND p/k/a DE RICO, MARIEO OVERTON**,
Plaintiffs-Appellants,

v.

**JUSTIN BIEBER**, **USHER RAYMOND IV p/k/a USHER, HEATHER BRIGHT, Individually and d/b/a B-RHAKA PUBLISHING, RAY ROMULUS a/k/a RAYRO and d/b/a PLEASE ENJOY THE MUSIC, and JONATHON YIP, Individually and d/b/a PRODUCTS OF THE STREET, and JEREMY REEVES, Individually and d/b/a SUMPHU, UNIVERSAL MUSIC CORPORATION, SONY/ATV MUSICAL PUBLISHING, LLC., BIEBER TIME PUBLISHING, LLC., WB MUSIC GROUP, STAGE THREE MUSIC (U.S.), INC., STAGE THREE MUSIC, LLC., AND JONETTA PATTON**
Defendants-Appellees.

---

On appeal for the United States District Court for the Eastern District of Virginia,
Norfolk Division Case No. 2:13-cv-00246-AWA-TEM
The Honorable Arenda L. Wright Allen

---

## APPELLANTS' OPENING BRIEF

---

Duncan G. Byers
Byers Law Group
142 w. York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340
duncan.byers@byerslawgroup.com
admin@byerslawgroup.com

*Counsel for Appellants Devin Copeland and Marieo Overton*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1427__    Caption: _Copeland, et al v. Bieber, et al_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Devin Copeland p/k/a DeRico_
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent
    corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
    other publicly held entity?                                                ☐ YES ☑ NO
    If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Duncan G. Byers _____    Date: _____ May 15, 2014 _____

Counsel for: Devin Copeland _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____ May 15, 2014 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Stephen E. Noona                      See Attached for Further Service Information
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510

/s/ Duncan G. Byers _____          _____ May 15, 2014 _____
     (signature)                                        (date)

- 2 -

CERTIFICATE OF SERVICE

I certify that on May 15, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Howard Weitzman
Jeremiah T. Reynolds
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Counsel for Appellees Justin Bieber, Universal Music Corp.,LLC and The Island Def Jam Music Group*

Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, NY 10016
Telephone: 212-687-5464
Facsimile: 212-557-0565
jdd@jddavispc.com
*Attorney for Appellee Usher Raymond IV p/k/a "Usher"*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
Telephone: 202-618-5000
Facsimile: 202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
Telephone: 212-407-4000
Facsimile: 212-407-4990
bslotnick@loeb.com

lchen@loeb.com
*Counsel for Appellees Heather Bright, Individually and d/b/a B-RHAKA Publishing*
*LLC, WB Music Corp. and Sony/ATV Music Publishing LLC.*

James H. Freeman, Esq.
1515 Broadway, 11th Floor
New York, NY 10036
(212) 931-8535
James@JHFreemanLaw.com

*Counsel for Ray Romulus a/k/a Rayro, Individually and d/b/a Please Enjoy the Music; Jonathan*
*Yip, Individually and d/b/a Products of the Street, and Jeremy Reeves, Individually and d/b/a*
*SUMPHU*

/s/ Duncan G. Byers
Duncan G. Byers, Esquire
Virginia Bar No. 48146
Jeffrey D. Wilson, Esquire
Virginia Bar No. 75734
BYERS LAW GROUP
142 W York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340 Telephone
(757) 227-3341 Facsimile
*duncan.byers@byerslawgroup.com*
*jdwilson@byerslawgroup.com*
*admin@byerslawgroup.com*

*Counsel for Plaintiffs Devin Copeland and*
*Mareio Overton*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1427__        Caption: __Copeland, et al v. Bieber, et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mareio Overton__
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
       If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
       If yes, identify any trustee and the members of any creditors' committee:


Signature: /s/ Duncan G. Byers                         Date:     May 15, 2014

Counsel for: Mareio Overton


## CERTIFICATE OF SERVICE
***************************

I certify that on _____ May 15, 2014 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Stephen E. Noona                          See Attached for Further Service Information
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510


/s/ Duncan G. Byers                              May 15, 2014
     (signature)                                      (date)

- 2 -

## CERTIFICATE OF SERVICE

I certify that on May 15, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Howard Weitzman
Jeremiah T. Reynolds
Kinsella Weitzman Iser Kump & Aldisert
808 Wilshire Blvd., 3rd Floor
Santa Monica, CA 90401
Telephone: 310-566-9800
Facsimile: 310-566-9884
hweitzman@kwikalaw.com
jreynolds@kwikalaw.com

*Counsel for Appellees Justin Bieber, Universal Music Corp.,LLC and The Island Def Jam Music Group*

Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
99 Park Avenue, Suite 1600
New York, NY 10016
Telephone: 212-687-5464
Facsimile: 212-557-0565
jdd@jddavispc.com
*Attorney for Appellee Usher Raymond IV p/k/a "Usher"*

Nathan Muyskens
Virginia State Bar No. 39168
Loeb & Loeb LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
Telephone: 202-618-5000
Facsimile: 202-618-5001
nmuyskens@loeb.com

Barry I. Slotnick *(pro hac vice)*
Cheng L. Chen *(pro hac vice)*
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
Telephone: 212-407-4000
Facsimile: 212-407-4990
bslotnick@loeb.com

lchen@loeb.com
*Counsel for Appellees Heather Bright, Individually and d/b/a B-RHAKA Publishing LLC, WB Music Corp. and Sony/ATV Music Publishing LLC.*

James H. Freeman, Esq.
1515 Broadway, 11th Floor
New York, NY 10036
(212) 931-8535
James@JHFreemanLaw.com

*Counsel for Ray Romulus a/k/a Rayro, Individually and d/b/a Please Enjoy the Music; Jonathan Yip, Individually and d/b/a Products of the Street, and Jeremy Reeves, Individually and d/b/a SUMPHU*

/s/ Duncan G. Byers
Duncan G. Byers, Esquire
Virginia Bar No. 48146
Jeffrey D. Wilson, Esquire
Virginia Bar No. 75734
BYERS LAW GROUP
142 W York Street, Suite 910
Norfolk, VA 23510
(757) 227-3340 Telephone
(757) 227-3341 Facsimile
*duncan.byers@byerslawgroup.com*
*jdwilson@byerslawgroup.com*
*admin@byerslawgroup.com*

*Counsel for Plaintiffs Devin Copeland and Mareio Overton*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF THE ISSUE.....................................................................1

STATEMENT OF THE CASE.......................................................................2

SUMMARY OF THE ARGUMENT .............................................................5

ARGUMENT .................................................................................................7

    I.     Background ……...………………………………………………...7

    II.    This Court should modify its analysis of substantial similarity in musical works to bring the test in line with the applicable test in the Ninth Circuit…………………………………………………...8

       a)  The *Arnstein and Krofft* tests and their adoption in the Fourth Circuit…………………………………………………..…8

       b)  Evolution of the *Krofft* test……………………………………..…10

       c)  The *Krofft* test as applied in this Circuit denies a plaintiff Protection under the Copyright Act and must be modified……………….….……………………………..…12

    III.   The trial court erred in its comparison of the works at issue……………………………………………………....…………15

    IV.   The trial court erred by not distinguishing the protected and unprotected material in Copeland's work…………………………...17

i

V.      The trial court erred in excluding the evidence presented by
        Appellants in their response brief as well as other evidence presented
        in connection with and in defense against Appellees' Motion to
        dismiss…………   ……………………………………….………28


VI.     The trial court erred in determining the intended audience
        test should be applied from the perspective of an average
        "lay person."……………………………………………......29

VII.    Summary……….………………………………………......30


CONCLUSION………………………………………………….……32

ORAL ARGUMENT STATEMENT…………………………………...33

CERTIFICATE OF COMPLIANCE……………………………….....34

CERTIFICATE OF FILING AND SERVICE……………………….…35

# TABLE OF AUTHORITIES

**Cases**

*Aliotti v. R. Dakin & Co.,*
   831 F.2d 898 (9th Cir. 1987) .................................................. 10, 18, 21

*Allen v. Standard Crankshaft & Hydraulic Co.,*
   323 F.2d 29 (4th Cir.1963)……………… ………..…………………….…22

*Apple Computer, Inc. v. Microsoft Corp.,*
   35 F.3d 1435 (9th Cir.1994). .................................................... 10, 17

*Arnstein v. Porter,*
   154 F.2d 464 (2d Cir. 1946)...................................................................9

*Beal v. Paramount Pictures Corp.,*
   20 F.3d 454 (11th Cir. 1994) ...............................................................19

*Bell Atlantic MD  v. Prince George's County MD,*
   212 F.3d 863 (4th Cir.2000) ...............................................................17

*Berkic v. Crichton,*
   761 F.2d 1289 (9th Cir.1985) ...................................................... 10,18

*Bowen v. Paisley,*
   No. 3:13-cv-0414 (M.D. Tenn., Dec. 3, 2013) ..................................24,

*Brainard v. Vassar,*
   625 F. Supp. 2d 608 (M.D. Tenn. 2009)............................................24

*Bridgeport Music, Inc. v. UMG Recordings,*
   585 F.3d 267 (6th Cir. 2009) ..............................................................24

*Cavalier v. Random House, Inc.,*
   297 F.3d 815 (9th Cir. 2002) ..............................................................19

*Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*
   No. 4:10cv129 (E.D. Va Sept. 30,2013)…………………………….……..20

*CMM Cable Rep. Inc. v. Ocean Coast Properties Inc.,*
   97 F3d 1504 (1st Cir. 1996)..............................................................18

*Dallier v. Levi Strauss & Co.,*
   86 F.3d 1149 (4th Cir. 1996) ..............................................................12

*Data General Corp. v. Grumman Systems Support Corp.,*
   36 F.3d 1147 (1st Cir. 1994)..............................................................27

*Dawson v. Hinshaw Music, Inc.,*
   905 F.2d 731 (4th Cir. 1990) ............................................. 9, 10, 12, 29

*Dicky-john Corp. v. International Tapetronics Corp.,*
   710 F.2d 329 (7th Cir.1983)……………………………………………....22

*Funky Films Inc. v. Time Warner Entertainment,*
   462 F.3d 1072 (9th Cir. 2006)..............................................................11

*Ganz Bros. Toys v. Midwest Importers,*
   834 F.Supp. 896 (E.D. Va. 1993) ....................................................27

*Harper & Row Publishers, Inc. v. Nation Enterprises,*
   471 U.S. 539 (1985)..............................................................19

iv

*Harvester, Inc. v. Rule Joy Trammell+Rubio, LLC*
   716 Supp.2d 428 (E.D. Va, 2010)……………… ………………………………20


*Innovative Legal Mktg., LLC v. Mkt. Master-Legal,*
   852 R. Supp. 2d 688 (E.D. Va. 2012)…………………………………………..12


*Intervest Const., Inc. v. Canterbury Estate Homes,*
   554 F.3d 914 (11th Cir. 2008) ...............................................................20


*L.A. Printex Indus. Inc. v. Aeropostale, Inc.,*
   676 F.3d 841 (9th Cir. 2012) ................................................................11


*Lyons Partnership v. Morris Costume,*
   243 F.3d 789 (4th Cir. 2001) ........................................................... 9, 18


*McKinley v. Raye*,
   1998 WL 119530 (N.D. Tex. Mar. 10, 1998).......................................25


*Mena v. Fox Entm't Group, Inc.,*
   2012 U.S. Dist. LEXIS 143964 (S.D.N.Y. Sept. 27, 2012) ................................22


*Miller v. Carolinas Healthcare Syst.,*
   No. 13-1856, *3 (4th Cir. Mar. 13, 2014)..........................................28


*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC,*
   702 F.3d 1312 (11th Cir. 2012) ..........................................................19


*Nemours v. Kolon Indus.*
   637 F.3d 435 (4th Cir. 2011) ..............................................................23


*Oravec v. Sunny isles Luxury Ventures, L.C.,*
   527 F.3d 1218 (11th Cir. 2008) ..........................................................18

*Peter Letterese & Assoc. v. World Inst. of Scientology,*
  553 F.3d 1287 (11th Cir. 2008) ………………………………… . ……..21


*Philips v. Pitt Cnty. Mem'l Hosp.,*
  572 F.3d 176 (4th Cir. 2009) ....................................................................... 28, 29


*Reed Elsevier, Inc. v. Muchnick,*
  559 U.S. 154 (2010).............................................................................27


*Santrayll v. Burrell,*
  1996 WL 134803 (S.D.N.Y. Mar. 25, 1996)......................................................25


*Shaw v. Lindheim,*
  919 F.2d 1353 (9th Cir.1990) ....................................................... 11, 12


*Sheldon v. Metro-Goldwyn Pictures Corp.,*
  81 F.2d 49 (2nd Cir. 1936) ...............................................................21


*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,*
  562 F.2d 1157 (9th Cir.1977) .................................................... 1, 8, 25


*Sieger Suarez Architectural P'ship, Inc. v. Aquitectonica Int'l Corp.,*
  No. 13-21928-CIV-KING (S.D. Fla., February 14, 2014) .................................30


*Stewart v. Abend,*
  495 U.S. 207 (1990)..............................................................................28


*Swirsky v. Carey,*
  376 F.3d 841 (9th Cir. 2004) ................................................... 14, 16, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007)..............................................................................28

*Towler v. Sayles,*
   76 F.3d 579 (4th Cir. 1996) ........................................................... 9, 15

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.,*
   338 F.2d 127 (2d Cir. 2003) ..............................................................22,

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency,*
   No. 12-2513 (4th Cir., March 13, 2014)..............................................29

*Universal Furniture Intern., Inc. v. Collezione Europa USA, Inc.,*
   618 F3d 417 (4th Cir. 2010) ........................................................ 13, 18

*Universal Pictures Co., Inc. v. Harold LLoyd Corp.,*
   162 F2d 354 (9th Cir.1947) …....…………………………………………25

*Washingtonian Pub. Co. v. Pearson,*
   306 U.S. 30 (1939)................................................................................27

*Williams v. Crichton,*
   84 F.3d 581 (2d Cir. 1996) ..................................................................19

*Zella v. E.W. Scripps Co.,*
   529 F.Supp.2d 1124 (C.D. Cal. 2007) ................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6).................................... 1, 3, 5, 8, 10, 14, 23, 25, 31

**Statutes**

17 U.S.C. § 101 *et seq*……………………………………………………………..1

17 U.S.C. § 407 …....…………………………………………………………….26

17 U.S.C. § 408…………………….…………………………………….......26, 27

28 U.S.C. § 1331 …………………………..…………………………………….1

28 U.S.C. § 1291 …………………………..…………………………………….1

28 U.S.C. § 1338…………………………………………………………….…...2

**Other Authorities**

H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 5 (1976)............................................27

Robert W. Denton, *The Evolution and Inevitable Demise of the Extrinsic-Intrinsic Test for Determining "Substantial Similarity" in Copyright Cases*, NEW MATTER Vol. 31, No. 1, 21 (2006)……………………10

U.S.C.C.A.N. 37 C.F.R. Sec. 202.20(c)(2)(vii)......................................................27

## JURISDICTIONAL STATEMENT

1.  The District Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because the action is based upon violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.

2.  This Court has appellate jurisdiction in this matter under 28 U.S.C. § 1291 (final decisions of district courts) in that a final judgment order under Fed. R. Civ. P. 12(b)(6) disposing of all the claims in the case was entered by the District Court on March 28, 2014.

3.  Notice of Appeal was filed on April 23, 2014.

## STATEMENT OF THE ISSUES

1.  Whether the Court should modify its substantial similarity test for copyright infringement to comport with the line of cases in the Ninth Circuit following *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977).

2.  Whether, in a music copyright infringement case, if an expert opinion is incorporated by reference and relied upon in a plaintiff's complaint, the trial court may exclude the expert materials when deciding a 12(b)(6) motion.

3.  Whether a trial court may perform a substantial similarity analysis in the a copyright infringement case without first performing a dissection of the copyrighted work to identify the protected and unprotected in the work, and

whether a trial court may dismiss a copyright infringement claim on a 12(b)(6)

motion to dismiss based solely on a comparison of the works under the subjective

analysis prong of the substantial similarity test.

    4.  Whether the trial court erred in determining that the intended audience

for the copyrighted work at issue is represented by the average "lay person" rather

than by industry professionals.

## STATEMENT OF THE CASE

    Plaintiff-Appellants Devin Copeland p/k/a De Rico and Mareio Overton

(collectively "Appellants" or "Copeland") are the authors of a song entitled

"Somebody to Love" (the "Copeland Version").  The song was included on De

Rico's album "My Story II," and copyright registration PAu 3-554-480 was issued

to Appellants on October 2, 2008.  JA (Joint Appendix) 021; My Story II CD,

Track 3.  In 2009, Usher Raymond IV ("Usher") recorded a demo version (the

"Demo Version") of a song titled "Somebody to Love."  JA012; Usher Raymond

IV Demo Version CD. The Demo Version was never released to the general

public, although it was uploaded to the website YouTube as early as February 28,

2010.  *Id.*  In 2010, Justin Bieber ("Bieber") recorded a version of "Somebody to

Love" with Usher (the "Bieber Version") that was released that spring on Bieber's

album "My World 2.0."  JA013; Bieber CD, Track 1.  Later in 2010, a second

version of the song performed by Bieber and Usher (the "Remix Version") was

released. JA013 ¶ 45, Bieber CD Track 2. After they became aware of Bieber and Usher's versions, Appellants retained an expert musicologist to compare the works to the Copeland version.  Copeland filed a Complaint against Defendants (collectively "Bieber" or "Defendants") for copyright infringement on May 2, 2013, JA001-019, alleging that the Demo Version, the Bieber Version, and the Remix Version (collectively, "Defendants' Versions") are infringing copies of the Copeland Version.  As part of their complaint, Appellants incorporated specific factual allegations from their expert's report and opinion. JA013-15, ¶¶s 47-8.

On June 28, 2013 defendants Universal Music Corp. ("UMC") and The Island Def Jam Music Group ("Def Jam") filed their Motion to Dismiss pursuant to Rule 12(b)(6) and Memorandum of Law in Support.  JA023-75.  The remaining defendants joined the Motion to Dismiss.  JA076-84, 185-189.  For the purposes of the Motion to Dismiss, Appellees did not dispute the validity of Copeland's copyright registration or access.  JA249.  The trial court only considered whether or not Appellants had alleged facts sufficient to survive a 12(b)(6) challenge based upon the musical works before the trial court.  Appellants' Response, JA089-184, included the entire expert report (the "Wood Report") relied upon in the Complaint.  JA115 -184.  UMG and Def Jam filed their Reply on August 16, 2013. JA190-210.  The remaining defendants joined the Reply.  JA211-220.

On December 17, 2013, the court entered an Order (the "12/17/13 Order"),
JA221-43, addressing the 12(b)(6) motion to dismiss, identifying the standard of
law to be applied, JA237-43, and stating that oral argument was needed to
determine if (i) expert testimony was required on the issue of extrinsic similarity,
JA241, and (ii) the intended audience for the purposes of intrinsic analysis is
members of the music industry, as Copeland asserted, or the general public.
JA242.

On March 7, 2014, the trial court heard oral argument on the matter. JA244;
JA259-297 (transcript of the proceedings). On March 28, 2014 the trial court
entered its Order granting Appellees' Motion to Dismiss (the "03/28/14 Order").
JA244-254.

In its 03/28/14 Order the trial court acknowledged the two-part test in this
Circuit for determining substantial similarity, JA249-50. The court then excluded
the Appellants' expert report. JA250-51. The court then determined that the
intended audience is the general public rather than industry professionals. JA253.

Finally, the court listened to the songs to compare the Copeland Version and
the Defendants' Versions. JA253-4. However, the court only analyzed the songs
using an intrinsic analysis, finding that "a reasonable juror could not conclude that
a member of the public would construe the aesthetic appeal of the songs as being

-4-

similar." JA254.  The court explicitly stated that it did not consider the extrinsic

similarity of the songs.  *Id*.

## SUMMARY OF THE ARGUMENT

Copeland asks this Court to consider the status of the substantial similarity

test in the Fourth Circuit.  The Court adopted the test in 1990 from Ninth Circuit

authority, which requires a comparison of works to be accomplished in two parts:

an extrinsic (objective) analysis and an intrinsic (subjective) analysis.  As it stands,

the test allows a trial judge considering a 12(b)(6) motion to find that the works at

issue are not similar enough that a juror could find them extrinsically or

intrinsically similar.  A significant part of the intent behind allowing a court to

apply the test was to allow trial judges to dispose with rapidly-proliferating,

frivolous copyright cases at the early stages of litigation.

The Fourth Circuit's test in inherently flawed in that, in an attempt to give

trial courts a tool to deal with frivolous copyright claims, it instead allows the

courts to prematurely terminate the claims of worthy plaintiffs.  Copeland contends

that this Court should bring the test back in line with the Ninth Circuit test, which

has been modified in recent years to address this flaw.  Using this modern,

modified substantial similarity test, the Court should find that Copeland did claim

and establish sufficient extrinsic similarity to survive a 12(b)(6) motion and

remand the matter for further action on the merits.

Even if this Court does not modify the substantial similarity test, the Court should still find that the trial court erred in its comparison of the works. First, although the trial court identified the test that it would apply in analyzing the works, the court failed to apply the test as articulated. The court did not first apply the extrinsic analysis or start by distinguishing the protected and unprotected material of Copeland's song as required by the test. Instead, the court moved directly to the second prong, the "intrinsic" (subjective) portion of the test, and decided the matter solely on that basis. Under the test adopted by this Circuit, a trial court must perform both the extrinsic and intrinsic analysis in a copyright infringement case, and must begin with the extrinsic analysis. The trial court erred, therefore, by dismissing the case solely on the basis of the second, subjective prong of the test.

The trial court also erred in excluding evidence presented by Copeland in conjunction with Appellants' response brief and by not considering the facts as alleged on the face of the Complaint. The excluded evidence primarily consisted of an expert report that was incorporated into and specifically summarized and relied upon in the Complaint. The facts alleged in the Complaint that were not considered by the trial judge were incorporated directly from the excluded expert report. The court therefore erred in (i) not considering the facts alleged on the face of the Complaint and (ii) not considering the expert report.

Finally, Copeland argues that the trial court erred in determining that the intended audience for Copeland's work is the general public rather than music industry professionals. The face of the Complaint makes it clear that Copeland submitted the work to a highly specialized group of individuals who would be able to identify the significant structural similarities between the works at issue even if the lay public could not. This error is compounded by the fact that this decision, when taken in context of the trial court's decision as a whole, led the trial court to (i) not consider facts as alleged on the face of the complaint, (ii) exclude the material that was incorporated into and specifically relied upon in the complaint, and (iii) perform a subjective comparison of the works ostensibly as heard through the ears of a lay person.

## ARGUMENT

### I. Background.

The Court's test for substantial similarity – including the extrinsic and intrinsic analysis – is based upon a Ninth Circuit test that has been found to be flawed and has been modified by that Circuit. This Court should take the opportunity to address the flaws in its test by bringing it in line with the test as it is now understood and applied in the Ninth Circuit. Application of the current test results in isolated and purely subjective decision making by a judge, denying a

plaintiff not only the protections provided by the Copyright Act, but also denying them a fair day in court.

In addition, this Court has never addressed the question of whether the second, "intrinsic" prong of the substantial similarity analysis may be accomplished without performing an extrinsic analysis and whether, on the basis of the intrinsic analysis alone, a music copyright infringement case may be dismissed at the 12(b)(6) stage.

The Court has also not addressed whether, in a music copyright infringement case, if an expert opinion is incorporated by reference and relied upon in a plaintiff's complaint, the trial court may exclude the expert materials when deciding a 12(b)(6) motion. Finally, this Court has not determined whether a musical work submitted solely for consideration by industry experts is subject to the "ordinary observer" test or whether, as under the facts of this case, expert testimony is required before a comparison of the works may be done by a trial court.

**II. This Court should modify its analysis of substantial similarity in musical works to bring the test in line with the applicable test in the Ninth Circuit.**

     **a. The *Arnstein* and *Krofft* tests and their adoption in the Fourth Circuit.**

In 1977, the Ninth Circuit adopted the two prong extrinsic-intrinsic test for copyright infringement.  *Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*("*Krofft*"), 562 F.2d 1157 (9th Cir. 1977).  The *Krofft* test requires a showing of not just similarity of ideas, but also similarity of expression, *Id.* at 1164, and the court termed the two prongs of the test the "extrinsic" (similarity of ideas) and the "intrinsic" (similarity of expression).[1]

In 1990 in *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731 (4th Cir. 1990), this Court analyzed the ordinary observer test in light of *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946).  The holding in *Dawson* brought Fourth Circuit analysis of substantial similarity in line with *Krofft*.   *Dawson*, 905 F.2d at 734.  In 2000, in *Lyons Partnership v. Morris Costume*, 243 F.3d 789 (4th Cir. 2000), this Court confirmed that the two-part analysis of substantial similarity requires a court to "first determine whether the two works are 'extrinsically similar because they contain substantially similar ideas that are subject to copyright protection' . . . [a]nd second, the court must ask whether the works are 'intrinsically similar' in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work."  *Lyons*, 243 F.3d at 801(citing *Towler v. Sayles*, 76 F.3d 579 (4th Cir. 1996)).

---

[1]      As early as 1946, it was recognized that "the second prong (intrinsic analysis) is a question of fact while the first prong (extrinsic analysis) may be an issue of law." *Arnstein v. Porter*, 154 F.2d 464, 472-73 (2d Cir. 1946).

This Court has never addressed the question of whether the second, "intrinsic" prong of the substantial similarity analysis may be applied without first performing an extrinsic analysis and whether, on the basis of the intrinsic analysis alone, a music copyright infringement case may be dismissed on a 12(b)(6) motion.

### b.  Evolution of the *Krofft* test.

In the time since its decision in *Krofft*, the Ninth Circuit has analyzed and modified the extrinsic test, transforming it from a comparison of expression to one comparing "the objective details of the works." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985*), cert. denied*, 474 U.S. 1052 (1985).[2]  Musical compositions generally contain both protectable and unprotectable copyright elements, and courts must identify the protectable elements as a necessary first step to both the extrinsic and intrinsic analysis not just so that ideas can be isolated and compared, but also to exclude the unprotectable expression of ideas while performing the intrinsic analysis.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 and 1446 (9th Cir. 1994);  *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th

---

[2]     For a comprehensive discussion of the evolution of the *Krofft* test, *see* Robert W. Denton, *The Evolution and Inevitable Demise of the Extrinsic-Intrinsic Test for Determining "Substantial Similarity" in Copyright Cases*, NEW MATTER Vol. 31, No. 1, 21 (2006) (available at *www.lurie-zepeda.com/law/wp.../pdf/rwd_new_matter_newsletter.pdf* ).

Cir. 1987) (holding that it is necessary to separate protectable from unprotectable expression when performing intrinsic test.)

In *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990), the Ninth Circuit reviewed a trial court's grant of summary judgment where the trial court found as a matter of law that there was no substantial similarity between two television scripts. In reversing and remanding the matter, the Ninth Circuit explained that literary works, unlike works where idea and expression merge in representational objects, require the two step analysis adopted by this Court – an "objective comparison of concrete similarities . . . [and] the subjective process of comprehension, reasoning, and understanding." *Shaw*, 919 F.2d at 1361. The *Shaw* Court held that, because the intrinsic analysis is purely subjective, it is improper for a court to find no substantial similarity after a party has satisfied the extrinsic test. In copyright actions that involve works where idea and expression do not merge, satisfaction of the extrinsic test is sufficient to survive summary judgment on the issue of substantial similarity. *Id.* at 1359. The Ninth Circuit has reaffirmed and restated this holding. *See L.A. Printex Indus. Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) ("on a summary judgment motion, a court's attempt to apply this subjective and fact-oriented standard, bypassing decision by the trier of fact, is not correct."); *see also Funky Films Inc. v. Time Warner Entm't. Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006) ("The substantial similarity test

-11-

contains extrinsic and intrinsic components.  At summary judgment, a court applies

only the extrinsic test; the intrinsic test, which examines an ordinary person's

subjective impressions of the similarities between two works, is the jury's

exclusive province."). The Ninth Circuit's *Shaw* analysis applies to both summary

judgment and motions to dismiss under Rule 12.  *Zella v. E.W. Scripps Co.*, 529

F.Supp.2d 1124, 1139 n.8 (C.D. Cal. 2007).

 The expansion of the extrinsic (objective) analysis in *Shaw* has been

recognized by this Court.  *Dallier v. Levi Strauss & Co.*, 86 F.3d 1149, - (4th Cir.

1996).  Lower courts in this Circuit have already recognized that, because the

substantial similarity analysis requires a perceptual, aesthetic judgment, it is often

inappropriate even for summary judgment.  JA096.  *See Innovative Legal Mktg.,*

*LLC v. Mkt. Masters-Legal*, 852 F. Supp. 2d 688, 702 (E.D. Va. 2012).  This Court

has also recognized that the extrinsic analysis is solely an objective inquiry, the

intrinsic analysis is solely a subjective inquiry, andthe objective–subjective

separation of the extrinsic and intrinsic tests is inherent in the *Krofft* analysis.

*Dawson*, 905 F.2d at 734.

  **c. The *Krofft* test as applied in this Circuit denies a plaintiff**

   **protection under the Copyright Act and must be modified.**

 The *Krofft* test drew a bright line between the extrinsic test (measuring the

similarity of ideas) and the intrinsic test (measuring the similarity of the expression

of those ideas). Similarity of ideas required objective analysis and similarity of expression required subjective analysis. Extrinsic analysis required analytic dissection and the intrinsic analysis did not. The fatal flaw in the *Krofft* test is that ideas are not protectable; similar ideas have no bearing on whether or not a work infringes because it is only the *expression* of those ideas that matters. In the *Krofft* analysis there is no elimination of unprotectable expressions of ideas when performing either the extrinsic or intrinsic test. Ideas are dissected in the extrinsic analysis and expression is analyzed in the intrinsic prong. Without performing the analytical dissection in both the extrinsic and intrinsic prongs, it is impossible to compare works without impermissibly comparing *ideas* in the works.

Allowing a trial court to review works using the unmodified *Krofft* test eviscerates the rights of an author. By not eliminating ideas from expression before comparing the "works as a whole" under the intrinsic prong, the expressions protected under the Copyright Act become trees lost in a forest, and may go completely unrecognized. While this Court has recognized that it is only the original elements of a copyright that are relevant in the comparison of works, *see Universal Furniture v. Collezione*, 618 F.3d 417, 436 (4th Cir. 2010), the test as currently applied fails to eliminate unoriginal elements before the intrinsic comparison is made.

Under the current test, therefore, there is no evidence, including expert

-13-

analysis and testimony, that can overcome the decision of a judge who makes a subjective determination that there is not enough similarity between works to survive a motion to dismiss or for summary judgment. This is so because no evidence, dissection, or use of expert opinions is permissible in the intrinsic analysis. A plaintiff could line up hundreds of experts and thousands of surveys showing substantial similarity of two songs and the trial judge still must rely solely on his individual subjective opinion about the songs and compare them as a whole, including the unprotectable ideas. Isolated and purely subjective decision making by a judge in this manner denies a plaintiff not only the protections provided by the Copyright Act, but also denies a plaintiff a fair day in court. The test encourages plaintiffs to avoid pre-filing investigation and, more importantly, spending time and money on experts because such pre-filing work, even if the results of such investigation and analysis are alleged in the complaint, will not be considered when the sufficiency of the complaint is assessed under 12(b)(6);

Correcting this problem requires bringing this Court's test in line with *Kroffts*' progeny. In particular, this Court should modify the current test such that (i) it requires the extrinsic analysis to be performed first using analytical dissection with an objective comparison of concrete similarities; (ii) that analytical dissection be used to separate protectable from unprotectable expression when performing the intrinsic test; (iii) that only the protectable expression of the copyrighted work be

-14-

compared rather than the entirety of the works when performing the subjective

(intrinsic) process of comprehension, reasoning, and understanding; and (iv) that

when a trial court judge is comparing the works in the context of a 12(b)(6) or a

summary judgment motion, the court should perform the extrinsic analysis only

and if the matter survives the extrinsic analysis, the intrinsic analysis should be left

to the ultimate finder of fact.

**III.    The trial court erred in its comparison of the works at issue.**

Regardless of whether this Court modifies the applicable substantial

similarity test to bring it in line with the Ninth Circuit's modification of the *Krofft*

test, the trial court erred in applying this Court's current test for substantial

similarity.

In its Order on December 17, 2013, the trial court laid out in detail the steps

it needed in analyzing substantial similarity between the diputed works.  JA0239.

It acknowledged that substantial similarity requires a two-part analysis, and that

"[f]irst, a plaintiff must show – typically with the aid of expert testimony – the

works in question are extrinsically similar because they contain substantially

similar ideas that are subject to copyright protection," thus satisfying the extrinsic

portion of the test.  *Id.* (*citing Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996)).

The trial court then noted that the intrinsic portion of the test may be satisfied by a

plaintiff showing "substantial similarity in how *those ideas* are expressed."  *Id*.

(emphasis added). The trial court acknowledged that "because the requirement is one of substantial similarity to protected elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Id.* (citing *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). The trial court further determined that "[t]he question of whether the accused songs are extrinsically similar to Plaintiffs' song depends on the significance of the alleged similarities." JA241 (the "12/27/13 Order").

In summary, then, the trial court determined that the correct analysis first requires a court to determine what in a plaintiffs' work is original and protectable. Second, a court determines if the works contain substantially similar protectable ideas (the extrinsic analysis). Finally, a court determines if the intrinsic test is satisfied by comparing how those protectable ideas are expressed. And, in this case, Copeland and Overton alleged in their Complaint specific similarities and statistical analysis of the songs. *Id.*

In the present case, the trial court did none of the above. Despite having twice correctly detailed the analysis it must take under current precedent in examining the Defendants' motion, the trial court ultimately ignored its own findings in making its final ruling. The court did perform its own subjective/intrinsic analysis and stated that it had "examined Plaintiffs' song and the three accused songs…" but found that the songs "cannot be reasonably

construed as being substantially similar." JA253. Under its own test, the court

should have then have performed an extrinsic analysis of the work in order to

determine if there was objective evidence of substantial similarity. Instead, the

court stopped its analysis halfway after applying the incorrect prong first,

concluding that its subjective/intrinsic analysis was sufficient to justify dismissing

the case.

When a court correctly states the law, it should follow its own statement.

*See Bell Atlantic MD v. Prince George's County MD*, 212 F.3d 863, (4th Cir.

2000) (vacating trial court's order when court did not follow its own correctly

stated legal analysis). The trial court correctly stated that it must perform an

extrinsic analysis in order to determine whether two works are substantial similar,

yet refused to follow through. By ignoring its own test, the court has failed to

perform the analysis it claims was necessary in order to justify dismissing

Plaintiffs' claims. The court's ruling is insufficient as a matter of law and must be

vacated.

## IV.    The trial court erred by not distinguishing the protected and unprotected material in Copeland's work.

Not only did the trial court fail to perform an extrinsic analysis of the works,

but it also failed to distinguish the protectable and unprotectable elements in

Copeland's work before performing its intrinsic analysis. It is well established

that, before it can begin an analysis of copyrighted works, the court must distinguish between protected and unprotected material. *See Swirsky*, 376 F.3d at 845. This Court has recognized that "substantial similarity asks whether a defendant copied the 'original elements' of a copyright. *Universal Furniture v. Collezione*, 618 F.3d 417, 436 (4th Cir. 2010) (citing *Lyons P'ship v. Morris*, 243 F.3d 789, 801 (4th Cir. 2001)) (emphasis in original). Other courts have acknowledged that "[T]he Copyright Act itself seems to mandate the "dissection" of works into copyrightable and uncopyrightable elements." *CMM Cable Rep. Inc. v. Ocean Coast Properties Inc.*, 97 F3d 1504, 1514 (1st Cir. 1996). The First Circuit summarized the dissection analysis, stating

> "By dissecting the accused work and identifying those features which are protected in the copyrighted work, the court may be able to determine as a matter of law whether or not the former has copied protected aspects of the latter. The court can also determine, in at least a general way, those aspects of the work that are protected by the copyright and that should be considered in the subsequent comparative analysis under the ordinary observer test. Assuming copying of protected aspects is established, the trier of fact can then assess pursuant to the "ordinary observer test" whether there is substantial similarity between the protected expression and the accused work." *CMM Cable*, 97 F.3d at 1514.

Only expressions are protectable, not ideas. This concept is known as the "expression/idea dichotomy." *Oravec v. Sunny Isles Ventures, L.C.,* 527 F.3d 1218, 1224 (11th Cir. 2008) . "The copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Harper &*

*Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). And similarities between the works must be a "similarity of expression, *i.e*., material susceptible of copyright protection." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 n.4 (11th Cir. 1994).

The Ninth Circuit summarized this by stating, "A court 'must take care to inquire only whether `the *protectible elements, standing alone,* are substantially similar.'" *Cavalier v. Random House, Inc*., 297 F.3d 815, 822 (9th Cir. 2002), *citing Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996). Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination. *Id.*

The Eleventh Circuit has recognized this, holding that the question is whether a properly instructed jury could find "competing designs substantially similar at the level of protected expression." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012). Incorporating this understanding into its substantial similarity test, the Eleventh Circuit has limited summary judgment in copyright cases, approving it in cases "where: (1) because access has been established, the crucial issue is substantial similarity; (2) there may be substantial similarity with respect to the non-copyrightable elements of the two works compared; and (3) as to the protectable elements, there is substantial dissimilarity." *Interest Const., Inc. v. Canterbury Estate Homes*, 554

F.3d 914, 921 (11th Cir. 2008).   The *Interest* analysis has been adopted by lower courts in this Circuit.  *See Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, 716 F.Supp.2d 428, 437 (E.D. Va., 2010) (relying on *Interest* analysis in denying motion for summary judgment); *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, No. 4:10cv129 (E.D. Va. Sept. 30, 2013) (relying on *Interest* in support of grant of summary judgment after remand from this Court).  Although *Interest*,  concerned summary judgment decisions involving architectural works, the analysis remains the same for other fields and works.  Courts must separate original elements and compare those rather than all of the works or (more importantly) comparing unoriginal elements.

The correct test requires the dissection of the accused work before the substantial similarity analysis can be accomplished.  Here, the trial court mentioned in passing that "the accused songs have some elements in common with Plaintiffs' song," JA253, but did not separate those elements out, specify what those elements in common were, or identify whether they were protectable .  Despite acknowledging that there were similarities, the court simply found that after listening to the songs that there was not enough similarity that a reasonable juror could find infringement.

The trial court also erred in focusing on high-level generalities as points of comparison, rather than on the "articulable similarities with great[] specificity" that

Copeland has asserted are the protectable and copied elements.  S*ee, e.g., Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir. 1987).  Instead, it relied only on the differences in the "mood, tone, and subject matter" to support its conclusion. JA253.  The court committed an error by focusing on dissimilarities rather than the similarities between the works.  *Peter Letterese & Assoc. v. World Inst. of Scientology* ("*Letterese*"), 533 F.3d 1287, 1301 (11th Cir. 2008).  In *Letterese*, the court found that not only did the trial court incorrectly focus on dissimilarities, but also that a review of the works at issue "revealed potential instances of . . . fragmented literal similarity. . ." *Id*. at 1303.  As that court recognized, it is the relevant portion of the copyrighted work, not the infringing work that is important. *Id.* at 1307.  The *Letterese* court also recognized that "the extent of copying must be assessed with respect to both the quantitive and qualitative significance of the amount copied to the copyrighted work as a whole . . . taken to its extreme, [de minimus copying] would potentially permit the wholesale copying of  brief work merely by inserting it into a much longer work." *Id*.; *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2nd Cir. 1936) ("[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate.").

The trial court simply relied upon the "total concept and feel" (although sparingly) to grant Defendants' Motion to Dismiss.  "The 'total concept and feel' inquiry, however, is not carte blanche to rest findings of infringement on vague or

amorphous determinations… [and] would 'invite[] an abdication of analysis'."
*Mena v. Fox Entm't Group, Inc.*, 2012 U.S. Dist. LEXIS 143964, *5 (S.D.N.Y.
Sept. 27, 2012) (citing *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy,
Inc.*, 338 F.2d 127, 134 (2d Cir. 2003)).[4]   This Court has recognized the inherent
danger in having a trial court make decisions based solely upon their own
subjective analysis, particularly where, as here, the objective evidence does not
support their subjective opinion. *See Allen v. Standard Crankshaft & Hydraulic
Co.*, 323 F.2d 29, 34 (4th Cir. 1963) ("[J]udges should mistrust their subjective
notions if there are objective indicia to guide their judgments.").  "[L]egal theory [
] insists that cases are decided on the basis of an articulated principle and not on
the basis of a particular judge's opinion." *Dickey-john Corp. v. International
Tapetronics Corp.*, 710 F.2d 329, 336 (7th Cir. 1983) (discussing a court making
subjective determination on obviousness when determining whether or not  patent
was enforceable).

---

[4]     The trial court in *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg.
LLC*, No. 11-2206 *12-13, (4th Cir. Nov. 8, 2012) relied on the *Tufenkian* case and
this Court noted *Tufenkian* in rejecting the trial court's application of the Second
Circuit's "more discerning observer" test to a comparison of architectural works.
This Court held in *Charles W. Ross* that the particular facts of that case were
analytically indistinguishable from a previous furniture design case and that the
trial court erred in deviating from the substantial similarity test in the earlier case.
Appellants do not rely here upon *Tufenkian* for adoption of the "more discerning
observer" test.  Rather, Appellants rely upon it for the proposition that performing
only the "total concept and feel" method applied by the trial court in the present
case represents "an abdication of analysis."

This court's analysis is tempered by the standards in deciding a Rule 12(b)(6) motion. In such a posture, the court was required (as it acknowledged, JA245) to "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." JA245; *see also Nemours v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). The trial court, therefore had to accept as true all of the factual allegations at JA013-15. At no point, however, did the trial court consider those allegations except in passing: "[a]lthough the accused songs have some elements in common with Plaintiffs' song. . ." JA253.

Even assuming that the trial court was correct in only performing the intrinsic analysis wihtout making any determination as to the original protectable elements of the copyrighted work, the trial court cannot ignore those elements claimed as original by Copeland and Overton in their Complaint. This matter was decided by the trial court on a motion to dismiss under 12(b)(6), which requires the court to assume as true all facts alleged in the complaint. Given that this Circuit has recognized that it is the original elements that must be compared, and that the court must consider the facts alleged in the Complaint as true, the trial court must consider all allegations regarding original, protected expression that have been pled by the plaintiff. Where, as here, the claimed original elements that were copied are repeated, verbatim, in the chorus of a popular work that relies upon the chorus as a

critical element to a song's popularity, the court should make a determination

based upon those common elements and not lose sight of the trees for the forest.

It has been understood by various courts that small, but important musical

elements can be, in and of themselves, sufficient to establish a claim of copyright

infringement sufficient to overcome motions to dismiss and for summary

judgment. *See, e.g., Bowen v. Paisley,* No. 3:13-cv-0414 (M.D. Tenn., Dec. 3,

2013) (denying Defendants' Rule 12 motion to dismiss, on grounds that words

"remind me" and "baby remind me" as well as associated melodies and vocal

intonations found only in hooks of works at issue sufficiently similar to support

plausible claim of infringement)[5]; *Bridgeport Music, Inc. v. UMG Recordings*, 585

F.3d 267, 272 (6th Cir. 2009) (stating that infringing work appropriated the term

"bow now now, yippee yo, yippee yea," repeated the word "dog" in a low tone of

voice at periodic intervals, and included the sound of rhythmic panting, and "the

copied elements had such great qualitative importance to the song" that the Sixth

Circuit upheld the jury's finding of copyright infringement); *Brainard v. Vassar*,

625 F. Supp. 2d 608, 620 (M.D. Tenn. 2009) ("given the central importance of the

choruses to the songs' commercial viability and value, sufficient similarity here

could, potentially, demonstrate substantial similarity between the songs as a

---

[5] Although the *Bowen* holding is not binding on this Court, the facts and procedural posture of the *Bowen* case are respectfully commended to the Court as being very similar to this case and Appellants believe that the Bowen analysis may be a useful guide.

-24-

whole"); *Santrayll v. Burrell*, 1996 WL 134803, at *1-*2 (S.D.N.Y. Mar. 25, 1996) (finding that word "uh-oh" repeated four times to  particular "distinctive rhythm was protectable and could support a copyright infringement claim); *McKinley v. Raye*, 1998 WL 119530 (N.D. Tex. Mar. 10, 1998) (holding reasonable trier of fact could find "substantial similarity" where hooks contained identical lyrics, similar melodies, and specialized use within song compared to other types of songs).

"An infringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy." *Krofft,* 562 F.2d at 1167 (quoting *Universal Pictures Co., Inc. v. Harold Lloyd Corp.,* 162 F.2d 354, 360 (9th Cir.1947)).

If the decision of the trial court is allowed to stand and a trial judge may, on a 12(b)(6) motion, dismiss a complaint after comparing the works as a whole rather than comparing the protectable elements (as a whole) of the claimant's copyrighted work against the infringing work, this leaves an author of a work with at least two irreconcilable conflicts and defeats the purpose and clear language of the Copyright Act.

In order to attempt to preserve the original content of his work against possible infringement, an author would have to make a preemptive legal judgment, attempt to filter out unprotected elements from his work, and then file for

copyright protection only on those portions of the work that he is guessing are

protectable.  Such a burden conflicts with the Copyright Act itself.  Section 4 of the

Copyright Act of 1976, 17 U.S.C. § 407 (Deposit of copies or phonorecords for

Library of Congress) requires that "the owner of a copyright or of the exclusive

right of publication in a work . . . shall deposit . . . (1) two *complete* copies of the

best edition; or (2) if the work is a sound recording, two *complete* phonorecords of

the best edition, together with any printed or other visually perceptible material

published with such phonorecords."  17 U.S.C. § 407(a) (emphasis added).

Although the deposit requirements of § 407 are not conditions of copyright

protection, *Id.*, if the author does not comply with the requirements he is subject to

hefty fines.  17 U.S.C. § 407(d).

The Act further requires as a prerequisite for registration complete deposit

copies, including complete phonorecords for recorded works.  17 U.S.C. § 408(b).

The Copyright Office itself characterizes the deposits as "mandatory," even

providing an entire web page devoted to questions related to "Mandatory Deposit."

www.copyright.gov/faq/mandatory_deposit.html, last accessed July 24, 2014.

"[N]o action can be maintained before copies are actually deposited. . ."

*Washingtonian Pub. Co. v. Pearson*, 306 U.S. 30, 42 (1939).  "[T]he deposit

required by Section 408(b) serves the separate purpose of providing the Library's

Copyright Office with sufficient material to identify the work in which the

registrant claims a copyright." *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1161-62 (1st Cir. 1994) (*rev'd on other grounds*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160 (2010)), *citing* H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5766-70; 37 C.F.R. Sec. 202.20(c)(2)(vii) (requiring deposit of "identifying portions" of programs that are unpublished or published only in machine-readable form). In other words, a key purpose of the Section 408(b) deposit requirement is to prevent confusion about which work the author is attempting to register. "A valid copyright is established through proof of originality, copyrightability, and compliance with the statutory requirements imposed by the Copyright Act." *Ganz Bros. Toys v. Midwest Importers*, 834 F.Supp. 896, 900 (E.D. Va. 1993).

It is this deposited work that is compared against an alleged infringing work. Without the deposit as proof of what he is claiming copyrights in, it a significant challenge for a plaintiff to show what, if anything, a copyright registration is intended to cover.

In addition, "compilations or abridgments, adaptations, arrangements, dramatizations, translations or other versions of works . . ." that include previously copyrighted (or unprotectable) portions are copyrighted as a whole under § 3 of the copyright act. *Stewart v. Abend*, 495 U.S. 207, 234 (1990). This also leaves an author with the irreconcilable dilemma of forfeiting the original, protectable

selection and structure of a compilation and filing a stripped-down work that does not include any unprotectable elements (that he once again has to guess at), or filing the work as a whole and having a court dismiss a valid copyright infringement claim against another because the court compared the works as a whole rather than comparing the infringing work against only the protectable portions of the author's work.

**V.    The trial court erred in excluding the evidence presented by Appellants in their response brief as well as other evidence presented in connection with and in defense against Appellees' Motion to Dismiss.**

A court must accept the material facts alleged in the complaint as true. *Miller v. Carolinas Healthcare Syst.*, No. 13-1856, *3 (4th Cir. Mar. 13, 2014). "[I]n reviewing a Rule 12(b)(6) dismissal, [a court] is not confined to the four corners of the complaint. It is well established that '[a court] properly take judicial notice of matters of public record,' including statutes." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  A court may also consider "documents incorporated into the complaint by reference, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), "as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic," *Philips*, 572 F.3d at 180. Thus, before us, the parties properly cite to and rely on state statutes

and exhibits integral to the complaint." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, No. 12-2513, *7 (4th Cir., March 13, 2014).

In this case, not only did Copeland rely upon and incorporate the expert analysis in the Complaint, JA013-15, but the complete expert report was provided as an attachment to Copeland's Opposition to Defendants' Motion to Dismiss. JA089; JA115-184.  Despite that, however, the trial court excluded the expert report, JA250, and failed to consider those facts alleged in the Complaint that were incorporated into the Complaint.  The court did state that "although the accused songs have some elements in common with Plaintiffs' song, their mood, tone, and subject matter differ significantly."  JA253.  At no point did the trial court address the specific elements of copying identified by Copeland.

The trial court therefore erred in not accepting as true the factual allegations. Nor did the trial draw the reasonable inferences from the factual allegations.

**VI.  The trial court erred in determining that the intended audience test should be applied from the perspective of an average "lay person."**

As early as the *Dawson* decision, this Court has recognized the inherent dangers of relying on an uninformed, subjective opinion.  That court stated

> [O]nly a reckless indifference to common sense would lead a court to embrace a doctrine that requires a copyright case to turn on the opinion of someone who is ignorant of the relevant differences and similarities between two works.  Instead, the judgment should be informed by people who are familiar with the media at issue.

*Dawson*, 905 F.2d 731, 735 (4th Cir. 1990). The United States District Court for the Southern District of Florida summed up the dilemma facing this, and other Federal Circuits with regards to copyright infringement cases: "Upon a review of the case law across the circuits, this Court finds that the usual analysis of substantial similarity is too vague and the language misleading. In practice, the "average observer" referred to by the cases is not average at all." *Sieger Suarez Architectural P'ship, Inc. v. Aquitectonica Int'l Corp.*, No. 13-21928-CIV-KING, *10 (S.D. Fla., February 14, 2014).

In this case, the intended audience of Copelands' work is the audience that the work was submitted to – industry professionals. There is nothing on the record, especially at the 12(b)(6) stage of the matter, that could lead a court to conclude that the intended audience was anything other than what the facts alleged identify as the intended audience. As with the intrinsic prong of the substantial similarity analysis, allowing a court to make such a determination at this stage of the proceedings undermines the ability of an author to protect his works and to make his case based upon the facts of it rather than the subjective decision of a court.

## VII.   Summary.

If the decision of the trial court in this matter stands, there are several far-reaching effects beyond this particular case. The decision ultimately means that a

court has unfettered discretion when considering a Fed. R. Civ. P. 12(b)(6) motion and results in uncertainty for plaintiffs seeking to protect their copyrighted material. No amount of pre-filing investigation and due diligence will serve to overcome the isolation of the trial court's subjective analysis, even when the results of an expert review and analysis of the works at issue are incorporated into a complaint. A single judge, who may or may not have any familiarity with a particular genre of music, may not have a taste for the music at issue, or may not have the ear to consider particular nuances or devices in music is forced into the unenviable position of replacing not only expert review and analysis but also a jury that has had an opportunity to consider not just the works but also the other facts adduced at trial, including expert review and analysis. While the gatekeeping function of the trial court was necessarily expanded to avoid a glut of baseless copyright claims by those seeking to target the famous, not all plaintiffs are equal. Treating this case in the same manner as a claim for infringement that provides no specifics, analysis, or comparison of the works at issue raises the bar for entry so high that a plaintiff has no real hope of their case moving forward.

This result discourages plaintiffs from taking the time and expenditure to engage experts prior to filing suit. Why bother when the only question is whether or not a trial judge determines subjectively that there may or may not be some similarities? This results in an even higher standard than the pleading standard for

fraud.  The Ninth Circuit, recognizing the problem of having a court impose its subjective opinion at the motion to dismiss and summary judgment stages of a case, has modified the substantial similarity test to reflect that it is improper for a judge to dismiss an infringement case on the basis of the intrinsic (subjective) comparison of two works.

Further, the result leaves a copyright registrant with an insurmountable dilemma when registering a work.  Because a trial court will compare the works as a whole without any consideration of what is or is not original, protectable material in the registered work.  A claimant is therefore burdened by trying to decide how to register only those portions of their work that could later be deemed protectable. However, doing so violates the provisions of the Copyright Act – the Act requires registration of the work as a whole, and failing to do so will result not only in a failed attempt to copyright a work but also exposes the author to significant penalties.

## CONCLUSION

For the foregoing reasons, Appellants respectfully submit that this Court should reverse the decision of the trial court, and remand the matter for further consideration on the merits.

## ORAL ARGUMENT STATEMENT

Given the importance of the issues presented herein, Appellants believe that oral argument may assist the Court in deciding this case, and Appellants therefore request oral argument.

Dated:  August 1, 2014

Respectfully submitted,

/s/ Duncan G. Byers_____

Duncan G. Byers
BYERS LAWS GROUP
142 West York Street
Suite 910
Norfolk, Va.  23510
757.227.3340 (t); 757.227.3341 (f)
duncan.byers@byerslawgroup.com
admin@byerslawgroup.com

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains <u>7,752</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a 14-point proportionally spaced Times New Roman typeface using Microsoft Word 2007.

Date: August 1, 2014                          <u>s/Duncan G. Byers</u>
                                              Duncan G. Byers

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2014, the foregoing document was electronically filed with the Clerk of Court, and served on all parties or their counsel of record through the CM/ECF system.


Date: August 1, 2014                    s/Duncan G. Byers
                                        Duncan G. Byers